**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

JOHN G. OKONOWSKI, D.D.S,

     Plaintiff,

v.                                         Case No. 22-cv-12505

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

     Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT' MOTION**
**TO DISMISS AND COMPEL ARBITRATION**

     Before the court is the "Motion to Dismiss First Amended Complaint and Compel

Arbitration" filed by Defendant "Certain Underwriters at Lloyd's London" (ECF No. 10).[1]

_____

[1]     Suits involving Lloyd's of London are unique. One court has explained as follows:

> Under the structure of the insurance market known as Lloyd's of London,
> an insurance policy is obtained by contacting a Lloyd's broker who insures
> the risk by obtaining subscribers. The subscribers are syndicates,
> comprised of a few hundred or many thousand anonymous investors
> referred to as "Names" or underwriters. The broker insures the risk
> through agreements with the syndicates who each subscribe to a certain
> percentage of risk on the policy. The syndicates are not incorporated and
> have no independent legal identity. One Name from one of the syndicates
> is usually designated as a representative of all of the Names in all of the
> syndicates that subscribes to a given insurance policy, and that Name is
> the "lead underwriter" who is disclosed on the insurance policy. When
> litigation over a Lloyd's of London policy occurs, only the lead underwriter
> Name is sued. Even so, all of the Names in each of the syndicates
> subscribing to the policy is severally liable on the policy. See E.R. Squibb
> & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 929 (2d Cir.1998);
> Certain Underwriters at Lloyd's, London, England v. Layne, 26 F.3d 39, 42
> (6th Cir.1994).

Aetna Cas. & Sur. Co. v. Dow Chem. Co., 44 F. Supp. 2d 870, 879 (E.D. Mich. 1999)
(Edmund, J.). While the Plaintiff brings this action against "Defendant" (singular), the

The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). As explained below, the court will deny Defendant's Motion.

## I.  BACKGROUND[2]

### A.  The Policy

According to the First Amended Complaint, Plaintiff John G. Okonowski, D.D.S. was a dentist. (ECF No. 5, PageID.90.) Effective October 11, 2013, Plaintiff became insured under a disability income insurance policy issued by Defendant, bearing Certificate No. 1368236 (the "Policy"). (*Id.*, PageID.88). The Policy is administered by Disability Management Services, Inc. ("DMS"), a third-party administrator. (*Id.*)[3]

At issue is the Policy's provision for a $1,000,000 "Sickness and Injury Lump Sum Disability Benefit" ("LSD Benefit"), which states:

> Permanent Total Disability must occur while this Certificate is in force and which is a result of a Sickness or Injury that is first diagnosed by a Physician while this Certificate is in force or if a Sickness or Injury is first diagnosed by a Physician while this Certificate is in force then you must be declared to be Permanently Totally Disabled within 365 days from the date of the first diagnosis if that occurs beyond the expiry date of the Certificate.
>
> To be eligible for the Principal Sum benefit, You must be under the Regular Care of a Physician. If in the opinion of the Physician providing Regular Care, future or continued treatment would be of no benefit to You, Regular Care shall not be required.

---

defense refers to itself as "Defendants" (plural). The court will follow the singular form as denoted in the caption of this case, as the singular/plural designation is immaterial to the court's determination here.

[2]     Facts are taken from Plaintiff's First Amended Complaint (ECF No. 5). However, in resolving Defendant's motion to compel arbitration, the court may consider "affidavits and other evidence of a type that would be submissible at the summary judgment stage." *Powers v. Charles River Lab'ys, Inc.,* No. 16-CV-13668, 2017 WL 4324942, at *4 (E.D. Mich. Sept. 29, 2017) (Borman, J.) (citing cases).

[3]     There is no dispute that DMS acted on behalf of Defendant.

We reserve the right to have You examined by another Physician of Our choice. Should Your Physician and Our Physician not be able to agree that You are Permanently Totally Disabled, Your Physician and Our Physician shall name a third Physician to make a decision on the matter which shall be final and binding.

(*Id.*, PageID.88-89; ECF No. 10-2, PageID.266.)

As defined in the Policy:

**Permanent Total Disability** means that if solely due to a Sickness or Injury, You are not able to perform the substantial and material duties of Your Occupation and in the opinion of Competent Medical Authority recovery from such disability is not expected, even if You are at work in another occupation.

**Physician, Competent Medical Authority** means an individual who is qualified to perform or prescribe surgical or manipulative treatment. A Physician must be recognized (licensed and chartered) by the state or county in which he or she is practicing, cannot be You or a relative of Yours and must practice within the scope of his or her license. Treatment of a Sickness or Injury must be within the knowledge or expertise of the Physician.

**You, Your, Yourself** means the Insured listed in the Declarations [i.e., Plaintiff].

(ECF No. 5, PageID.89; ECF No. 10-2, PageID.262-63) (bolded texts in original).

The Policy also includes a "Grievance Procedure" section, which states:

Should You be dissatisfied with any claim or administration issue, the following step apply. Notwithstanding any other item set forth herein, the parties hereby agree that any dispute which arises shall follow these procedures:

1) General Inquiry: At any time You have the right to communicate with Us, either directly or through a representative, to seek clarification and assistance on any issue.

2) Informal review: Should You not be satisfied with the response from Your General Inquiry, You have the right to request an Informal Review. This Informal Review should be requested in writing, but may be verbally requested. The Informal Review should be requested within sixty (60) days following the claim or administrative decision, but in no case before such claim or administrative decision. We shall respond within a reasonable amount of time.

3) Formal Review: Should You still not be satisfied with the response You received through an Informal Review, then You have the right to request a Formal Review. Please provide a written summary of the issue and any items which may be useful for Us to review. A Formal Review must be requested no more than ninety (90) days following an Informal Review. We shall respond to Your request within a reasonable amount of time.

4) Legal Action: No legal action may be brought to recover under the insurance described in this Certificate until after the response of a Formal Review. No action may be brought more than one year after the date of the original claim or administrative decision. Legal Action shall not take place prior to a Formal Review.

(ECF No. 10-2, PageID.271.)

## B. Plaintiff's Claim

As alleged, in August 2015, Plaintiff transitioned out of his dentistry practice due to his medical problems. (ECF No. 5, PageID.92.) He applied and was approved monthly disability benefits under the Policy for the next 5 years,[4] during which time he was treated by his attending physicians who concluded that he could not work. (*Id.*, PageID.93-95.)

In August 2020, at the request of DMS, Plaintiff attended an "Independent Medical Examination" ("IME") with Daniel M. Ryan, M.D., who specializes in Physical Medicine and Rehabilitation. (*Id.*, PageID.95.) Dr. Ryan wrote in his report that he "would limit [Plaintiff] in terms of repetitive motion including grasping, pushing, and pulling with the left extremity" and that "[b]ased on [Plaintiff's] complaint, this would limit him in terms of performing the skills necessary as a dentist." *Id.* However, Dr. Ryan was unable to reach any specific diagnoses or conclusion on Plaintiff's restriction and limitations. (*Id.*, PageID.95-96.)

---

[4] The monthly disability benefits are provided under a different section of the Policy and not at issue. (ECF No. 10-2, pageID.264-65.)

Plaintiff asserts that by December 9, 2020, he was diagnosed with peripheral neuropathy, cervical transverse myelitis, dystonia left hand and left toes, lumbar spine stenosis, cervical spine stenosis, and paresthesia left upper extremity and bilateral lower extremities. (*Id,* PageID.96.) At this point, there were three months left in the 63-month elimination period required for the LSD Benefit. (*Id.*)

On December 11, 2020, Plaintiff's treating physician, Dr. Daniel Menskes, wrote a response to Dr. Ryan's IME report, reaffirming the diagnosis of cervical transverse myelitis and his "concerns regarding whether or not [Plaintiff] could safely practice his usual occupation." (*Id.*, PageID.97.) On January 4, 2021, Plaintiff himself emailed DMS seeking clarifications on Dr. Ryan's findings. (*Id.*, PageID.98.)

On February 25, 2021, DMS informed Plaintiff that Dr. Ryan had issued an addendum to his IME report and "recommend[ed] a second IME be performed by a board-certified neurologist as recommended by Dr. Ryan and Dr. Menkes." (*Id.* PageID.99; *see* ECF No.13-2.)

On March 9, 2021, Plaintiff reached the end of the 63-month elimination period for the LSD Benefit. (*Id.*) On March 10, through his retained counsel, Plaintiff submitted a position letter to DMS, in which he noted that the variances between Dr. Ryan's and Dr. Menkes's opinions were "not sufficient to trigger the 'neutral' third physician opinion allowed by the terms of the [P]olicy." (*Id.*, PageID.100.) Plaintiff thus took the position that the LSD Benefit was immediately payable. (*Id.*)

Eventually, the parties mutually agreed that a neurologist, Michael Grof, D.O, would conduct the additional exam, which took place on August 10, 2021. (*Id.*, PageID.101.) On September 13, 2021, Dr. Grof issued his findings. (*Id.*) According to

Plaintiff, Dr. Grof admitted to not have sufficient knowledge to opine on whether Plaintiff's conditions disable him from performing dentistry, and instead recommended another IME by someone with dentistry specialty. (*Id.*, PageID.101-02.)

On November 16, 2021, DMS/Defendant issued a letter to Plaintiff denying his claim for the LSD Benefit, which said, in part:

> In accordance with the Sickness and Injury Monthly Disability Benefits provision and the Sickness and Injury Lump Sum Disability Benefit provision, Dr. Grof's decision on the matter shall be final and binding. Dr. Grof concluded that [Plaintiff] is not totally, temporarily, or permanently disabled as a dentist. Based on Dr. Grof's opinion as well as the information available regarding [Plaintiff's] claim, Underwriters have determined that [Plaintiff] does not meet the definition of Permanent Total Disability and his claim for the Principal Sum Amount of $1,000,000.00 is denied.

(*Id.*) Plaintiff claims that DMS "cherry-picked and distorted Dr. Grof's statement to make it appear that he concluded that [] Plaintiff is not totally disabled from dentistry." (*Id.*, PageID.104.)

On January 12, 2022, as part of the Policy's "Grievance Procedure," Plaintiff requested an "Informal Review" of DMS/Defendant's decision to deny his claim for the LSD Benefit. (*Id.*, PageID.104-05.) In so doing, Plaintiff, through his counsel, challenged DMS/Defendant's characterization of Dr. Grof's opinion and whether it was made based on sufficient information. (*Id.*, PageID.105.) On March 10, 2022, Plaintiff was notified that Defendant had reviewed his "Informal Appeal" and maintained the decision to deny Plaintiff's claim for LSD Benefit. (*Id.*, PageID.106.) Specifically, Defendant, through DMS, disputed Plaintiff's assertion that it withheld information from Dr Grof. (ECF No. 10-2, PageID.245.) The response also indicated that Dr. Grof had been provided with new documentation supplied by Plaintiff, and Dr. Grof had prepared an addendum to his

report indicating that the additional information did not change his original opinion. (*Id.*, PageID.245-46.)

On June 8, 2022, Plaintiff submitted a "Formal Appeal" of the Defendant's decision and provided more information and reports to support his claim that he is "Permanently Totally Disabled" from performing the skills required of a dentist. (*Id.*, PageID.107-10.) On September 7, 2022, Plaintiff was notified that Defendant, through DMS, had affirmed its denial decision. (*Id.*, PageID.110.). Defendant reaffirmed Dr. Grof's findings and rejected the added opinions provided by Plaintiff from his treater, vocational expert, and dental expert (ECF no. 10-2, PageID.238-39.) However, Defendant stated that it "would agree to a limited supplemental evaluation and review of this matter by Dr. Grof on certain conditions." (*Id.*, PageID.232.)

In response to Plaintiff's breach of contract claim arising out of Defendant's refusal to pay the LSD Benefit (ECF No. 5, PageID.110-11), Defendant files the instant Motion. (ECF No. 10). Defendant contends that there exists an arbitration agreement in the last sentence of the LSD Benefit section, referred to as the "third-physician provision," which says: "Should Your Physician and Our Physician not be able to agree that You are Permanently Totally Disabled, Your Physician and Our Physician shall name a third Physician to make a decision on the matter which shall be final and binding." (*Id.*, PageID.132-33.) Consequently, Defendant moves the court to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 and the Convention on the Recognition and Enforcement of Arbitral Award ("Convention"), 9 U.S.C. § 206. (*Id.*, PageID.121.) For the same reason that arbitration should be

compelled, Defendant also ask the court to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (*Id.*; *id.*, PageID.146.)

## I.   STANDARD

Under the FAA, courts may "compel[ ] arbitration when one party has failed or refused to comply with an arbitration agreement." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626-27 (6th Cir. 2004) (citing 9 U.S.C. § 4). In the field of international commerce, the Convention, implemented in Chapter 2 of the FAA, provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.[5]

In assessing the enforceability of arbitration agreements, the court must first determine whether "a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 415-16 (6th Cir. 2011) (citation omitted). State law applies to "general issues of contract formation and enforceability." *Sound Inpatient Physicians, Inc. v. Carr*, No. 20-6440, 2021 WL 3399642, at *2 (6th Cir. Aug. 4, 2021). "But whether the parties have agreed to 'arbitration' under the FAA is, of course, a matter of interpreting federal law." *Southard v. Newcomb Oil Co., LLC*, No. 20-5318, 2021 WL 3378933, at *1 (6th Cir. Aug. 4, 2021) (citing *Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684, 693 (6th Cir. 2012)). And while there is a

---

[5]   Defendant asserts that the purported arbitration provision in question is "also governed by [Convention], which is implemented domestically through the FAA." (ECF No. 10, PageID.135.) Plaintiff does not seem to dispute that if there was an enforceable arbitration agreement in this instance, the Convention would be applicable. (ECF No. 13, PageID.323.)

"liberal federal policy favoring arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985), "the presumption applies only to the scope of the arbitration agreement, not to its existence." *Southard*, 2021 WL 3378933, at *2 (internal quotations and citations omitted).

## II.  DISCUSSION[6]

"A longstanding principle of [the Sixth] Circuit is that no matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Simon v. Pfizer Inc.,* 398 F.3d 765, 775 (6th Cir. 2005) (citations omitted). "An [alleged] arbitration clause should be interpreted consistent with the terms of the agreement and should be enforced in the same manner as any other privately negotiated contract." *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.,* 383 F. App'x 517, 520 (6th Cir. 2010). "While ambiguities in the language of the agreement should be resolved in favor of arbitration, [courts] do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294, (2002)).

Whether the third physician provision at issue is an agreement to arbitrate "under the FAA depends upon how closely it resembles classic arbitration." *Sound Inpatient*

---

[6]    The court has reviewed "Plaintiff's Response to Order to Show Cause" (ECF No. 4), the revised jurisdictional assertions in "Plaintiff's First Amended Complaint" (ECF No. 5), and Defendant's concession on the parties' diversity (ECF No. 10, PageID.138-39). The court is satisfied that complete diversity exists to confer the court with subject matter jurisdiction under 28 U.S.C. § 1332(a) and thus proceeds with Defendant's argument on the merits.

*Physicians*, 2021 WL 3399642, at *2 (quoting *Evanston Ins. Co.*, 683 F.3d at 693). The common arbitration agreement includes "(1) a final, binding remedy by a third party; (2) an independent adjudicator; (3) substantive standards; and (4) an opportunity for each side to present its case." *Id.* (quotations and citations omitted).

The parties principally dispute the first element -- whether the third physician provision in question provides for a "final, binding remedy by a third party." *Id.* Defendant argues the affirmative, relying on the language stating that the determination of the third physician "shall be final and binding." (ECF No. 10, PageID.143.) In opposition, Plaintiff contends that the third physician's determination is subject to the three-step process set out by the Policy "that includes this legal action, in which any decision based on the determination made by the 'third physician' could be challenged." (ECF No. 13, PageID.325-30.)

As indicated above, the court must interpret the parties' intent as to the third physician provision at issue, together with the rest of the Policy. *Russell v. Citigroup, Inc.,* 748 F.3d 677, 681 (6th Cir. 2014) ("A court must interpret a provision in a contract not in isolation, but against the backdrop of 'the contract as a whole, ... the situation of the parties and the conditions under which the contract was written.'") "The [FAA's] presumption of arbitrability does not cut this process short." *Id.* Reading the third physician provision and the Grievance Procedure section together, the court agrees with Plaintiff's position that the third physician provision in question is not without qualification, and a third physician's decision made pursuant to that provision is susceptible to be overturned or ignored by Defendant on review. Consequently, it is not an agreement to arbitrate.

10

First, as Defendant observes, the Grievance Procedure section, which includes an option for "Legal Action," "applies broadly to any circumstance in which an insured is 'dissatisfied with any claim or administration issue'" (ECF No. 14, PageID.351; ECF No. 10-2, PageID.271.) Issues concerning the "Permanent Total Disability" assessment by a third physician – uncontrovertibly material to the determination of Plaintiff's claim – naturally fall within the inclusive scope of the Grievance Procedure section. *See In re Carter*, 553 F.3d 979, 986 (6th Cir. 2009) ("According to *Webster's New Collegiate Dictionary,* the term 'any' means '1: one or some indiscriminately of whatever kind" and "[2(b)]: all—used to indicate a maximum or a whole.'") (citing *Webster's Ninth New Collegiate Dictionary* 93 (9th ed.1988)); *Gourlay v. Barrett*, No. 10-CV-13191, 2017 WL 1329434, at *4 (E.D. Mich. Apr. 11, 2017) (Friedman, J.) ("The term "'[a]ny' means 'every; all.'"). The parties' exchanges during Plaintiff's challenges to Dr. Grof's decision in the review steps under the Grievance Procedure section confirm their understanding to this effect. (ECF No. 10-2, PageID.232-47.)

Defendant nonetheless contends that "Plaintiff's argument that the grievance provisions somehow render the third-physician provision less than 'final and binding' is not supported by the Policy term." (ECF No. 14, PageID.351.) In so doing, Defendant invokes the interpretive canons that the more specific language (per Defendant, the third physician provision) prevails over general language (the Grievance Procedure section, said Defendant). (*Id.*, *id.*, PageID.353.) However, the general/specific canon "can be overcome by textual indications that point in the other direction." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012). Here, the Policy explicitly provides that the process under the Grievance Procedure section applies

"[n]otwithstanding any other item set forth herein [i.e., in the Policy]." (ECF No. 10-2, PageID.271.) "[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.,* 508 U.S. 10, 18 (1993). *Deutsche Bank Nat. Tr. Co. v. Tucker*, 621 F.3d 460, 464 (6th Cir. 2010) ("[T]he term 'notwithstanding' functions in its normal supplanting way: it simply excludes application of the referenced section."). Thus, the Policy permits Defendant's reviews and possible legal actions– as provided in the Grievance Procedure section – even though the third physician's decision is supposed to be final and binding.

Defendant also argues that the grievance provisions do not "require [Defendant] to review grievances relating to third-physician decisions in a manner inconsistent with the specific 'final and binding' mandate of the Policy." (ECF No. 14, PageID.351-52.) However, Defendant need not be required to act contrary to the third physician's decision by the Policy to render it nonbinding. Having the capability of doing so is sufficient. In *Evanston Ins. Co.*, the Sixth Circuit concluded that the parties' agreement in an insurance policy to submit the determination of the amount of loss and the value of the building to appraisal "d[id] not provide for a final and binding remedy by a neutral third party." 683 F.3d at 693. The court's analysis was based on the statement that "[i]f there is an appraisal, we [the insurance company] will still retain our right to deny the claim." *Id.* That provision did not actually require the insurance company to deny the claim. *Id.* Similarly, in *Beers Construction Co. v. Pikeville United Methodist Hospital of Kentucky, Inc.*, 129 Fed. Appx. 266 (6th Cir. 2005), the court dealt with a construction contract providing for resolution of disputes by a third-party architect, whose decision

12

would be "final and binding on the parties but subject to legal proceedings." *Id.* at 271. The court held that this provision was not an agreement to arbitrate, because "the phrase 'but subject to legal proceedings' qualifies the phrase 'shall be final and binding,' but is not itself qualified or limited, and operates to render the [a]rchitect's decision merely advisory." *Id.* The language at issue in *Beers Construction Co.* did not mandate actual legal proceedings. *Id.*

Defendant's cited authorities are inapposite in this instance. First, Defendant relies on *Widmer Enterprises, LLC v. Falck USA, Inc.,* No. 18-CV-11138, 2019 WL 1057422 (E.D. Mich. Mar. 6, 2019) (Goldsmith, J.). There, the defendant entered an agreement to purchase a company owned by the plaintiff. *Id.* at *1. The parties agreed that if they could not resolve the dispute over the purchase price among themselves, they can refer the dispute for resolution to an accounting expert. *Id.* The accounting expert would act "as an expert and not as a mediator, render its opinion in accordance with the definitions and terms of this Agreement, and make a decision that would (in the absence of manifest error) be final and binding on the parties." *Id.* The court found that the dispute resolution provision at issue "appear[ed] to be the type of arbitration clause in everything but name contemplated by the Sixth Circuit." *Id.* at *3. Most important to the court were "the finality of the decision and independence of the adjudicator, . . . which [were] plainly present." *Id.* The court in *Widmer Enterprises, LLC,* unlike this court, was not presented with another provision in the same contract that qualifies the finality and binding effect of the third party's decision on further reviews and potential legal actions.

Defendant also points to *Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, No. 10-CV-1455 DLI LB, 2011 WL 4529668, at *3 (E.D.N.Y. Sept. 27, 2011). There, the insurance policy, like the one here, included a third physician provision which stated, in relevant part, "[s]hould your Physician and Our Physician not be able to agree that You are Totally Disabled, Your Physician and Our Physician shall name a third Physician to make a decision on the matter which shall be final and binding." *Id.* at *7. The court construed this provision as an arbitration clause. *Id. Bakoss,* however, is distinguishable, because the court there did not face the same "Grievance Procedure" section as in this instance. Specifically, the policy in *Bakoss* did not declare that the grievance process would apply "[n]otwithstanding any other item set forth" in the policy. *See Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, Docket No. 10-CV-1455, Doc. 31-2, PageID #: 756.

Additionally, contrary to Defendant's assertion, its responses to Plaintiff's submissions for informal and formal reviews under the 'Grievance Procedure' section show that the parties did not intend for Dr. Grof's decision to be final at the time it was rendered. Defendant acknowledges that it reviewed the adequacy of the information provided to Dr. Grof and the completeness of his findings in assessing Plaintiff's claim. (ECF No. 14, PageID.352.) The exhibits attached to Defendant's motion show that it provided additional information to Dr. Grof and was amenable to supply more data to him for his consideration, after he had already made his decision. (ECF No. 10-2, PageID.239, 245.) Defendant's actions evince the understanding that when Dr. Grof issued his conclusion, he did not fully settle the parties' dispute as to whether Plaintiff is "Permanently Totally Disabled," or arbitrate it to completion. *Evanston Ins. Co.*, 683

F.3d at 693. Defendant has not offered any authority suggesting that a decision should be deemed final and binding when one party can review its validity after it is rendered and subject it to further reevaluation.

Finally, in its Reply, Defendant for the first time points to the "Service of Suit Clause," which it purports to be "further confirmation that third-physician decisions are precisely what the Policy says they are – *final and binding* – and therefore, not subject to legal action or proceedings of any kind." (ECF No. 14, PageID.353) (emphasis in original). Generally, "arguments made to [the court] for the first time in a reply brief are waived." *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). In any case, the "Service of Suit Clause" does not provide the confirmation claimed by Plaintiff. (ECF No. 10-2, PageID.273.) Instead, it only disclaims that its presence "will not be read as to conflict or override the obligations of the parties to arbitrate their disputes as provided for in any Arbitration provision within [the Policy.]" (*Id.*) Since the third physician provision here does not impose an obligation to arbitrate on the parties, that sentence in the Service of Suit Clause is not implicated.

Because the third physician provision in dispute does not provide for a final and binding remedy by a third party, it does not constitute an arbitration agreement for purposes of the FAA. Accordingly, the court cannot sustain Defendant's requests that the court compel arbitration and dismiss Plaintiff's First Amended Complaint.

### III. CONCLUSION

IT IS ORDERED that Defendant's "Motion to Dismiss First Amended Complaint and Compel Arbitration" is DENIED.

s/Robert H. Cleland    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: May 19, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 19, 2023, by electronic and/or ordinary mail.

s/Lisa Wagner    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\NTH\Civil\Working\22-12505.OKONOWSKI.MotiontoDismissCompelArbitration.Nh.docx